UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

MICHAEL and KAROLYN BRADLEY,　　　　　　　　　　　No. 02-11609

　　　　　　　　　　　Debtor(s).
_____/

MICHAEL and KAROLYN BRADLEY,

　　　　　　　　　　　Plaintiff(s),

　　　v.　　　　　　　　　　　　　　　　　　　　A.P. No. 04-1093

BARRY R. SCHLOM,

　　　　　　　　　　　Defendant(s).
_____/

Memorandum Regarding Damages
_____

　　　　Prior to their Chapter 7 bankruptcy filing, plaintiffs Michael and Karolyn Bradley were intervening plaintiffs, along with 13 others, in complex litigation commenced by the Department of Corporations in Southern California alleging franchise law violations. The defendants in this adversary proceeding were the defendants in that action and their lawyer, Barry Schlom. The claims of the Bradleys and the other intervenors were based on written franchise agreements with attorneys' fee clauses.

　　　　The action went to trial in 2000. At is conclusion, the state court granted defendants' motion for a nonsuit. On March 7, 2002, defendants filed a motion for an award of attorneys' fees. Before the

1

motion was heard, the Bradleys filed their bankruptcy petition.

On September 24, 2002, the state court denied the motion for attorneys' fees.[1] Nothing further happened until October, 2003, when Schlom moved for judgment against the Bradleys and the other intervening plaintiffs. On December 8, 2003, the state court entered judgment against the Bradleys and the other intervening plaintiffs and Schlom made another motion for attorneys' fees against them. In response to this motion, the Bradleys' attorney filed pleadings in opposition which attached a copy of the Bradleys' bankruptcy discharge and squarely put the effect of the discharge before the state court.

On January 7, 2004, the state court entered a $350,000.00 award for attorneys' fees against all 15 intervenors, without mentioning the Bradleys' bankruptcy. In this adversary proceeding, the Bradleys seek a declaration that their debt to defendants has discharged and damages for violation of the automatic stay and discharge injunction.

In a prior memorandum, the court found that Bradleys' liability for attorneys fees was in fact discharged. All defendants have settled with the exception of Barry Schlom, the attorney who obtained the post-discharge judgment against the Bradleys. The Bradleys seek damages for emotional distress, lost wages, and over $33,000.00 in attorneys' fees against Schlom.

The court begins its analysis by noting that there is no private right of action for violation of the bankruptcy discharge injunction. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 508 (9th Cir. 2002); *In re Bassett*, 255 B.R. 747, 753-54 (9th Cir. BAP 2000), aff'd in relevant part at 285 F.3d 882. Civil contempt is the normal sanction for violation of the discharge injunction. *Walls*, at 507. While a debtor may seek damages and attorneys' fees in contempt proceedings, the primary purpose of civil contempt is to discourage the offending conduct. For this reason, the court has broad discretion in fashioning a

---

[1] The complaint in this adversary proceeding alleges that it was a violation of the automatic stay for this motion to be heard. However, there is no evidence that the Bradleys or their counsel objected and, in any event, the Bradleys prevailed without any expense. The court accordingly declines to award any damages for this technical violation of the automatic stay. The court notes that if the Bradleys' bankruptcy counsel had been pro-active at this point and taken action to have the motion dropped as to the Bradleys then this entire dispute would never have arisen.

2

remedy for violation of the discharge injunction. *Bassett*, 255 B.R. at 758.

The court declines to award the Bradleys all they might be entitled to if they had a private right of action for two reasons. First, such and award is not necessary in order to punish Schlom and discourage future like conduct. Second, and more importantly, this action would not have been necessary if the Bradley's original bankruptcy counsel, Brian Barta, had acted in a more diligent and capable manner.[2]

There is scant evidence as to Barta's actions when he filed the bankruptcy in 2002, so the court can only note that with a modest amount of forehandedness the current situation would not have arisen. However, the evidence makes clear that Barta's actions in early 2004 left much to be desired.

Barta first learned of the problem some time in late 2003 or very early 2004, either from the attorney representing the Bradleys in the state court litigation or the Bradleys themselves. He spoke to Schlom about it for the first time on January 15, 2004, yet did not follow up the conversation with a letter until February 4, when he sent Schlom a very brief letter containing neither citations nor copies of the schedules. Worse, he referred to the Bradley's former counsel in state court, Terence Beard, as the Bradleys' current attorney and demanded that a dismissal be obtained and provided to Beard as well as himself. It is clear that Barta did not have a clue as to the two substantial bankruptcy issues raised by the judgment entered against the Bradleys: whether the post-discharge judgment was subject to the discharge and whether the Bradleys had waived their right to have the issue resolved in bankruptcy court because they had presented the issue to the state court judge and lost.[3]

The delay between January 15 and February 4 and the incredible brevity of Barta's February 4 letter are inexplicable, as the situation called for prompt and decisive action. To his credit, Schlom

---

[2]The Bradleys argue that the court cannot make any findings as to Barta's lack of diligence because no evidence was introduced to establish the standard of care. However, no such evidence is necessary if the standard of care is within the common knowledge of the trier of fact. See *In re Belmar*, 319 B.R. 748, 754 (Bkrtcy.D.Colo.2004). The court does not need expert testimony to find that Barta's representation of the Bradleys was woefully inadequate.

[3]Barta undermined his own clients' case by referring to Beard in his letter, belying their argument that Beard had acted without authorization and no longer represented the Bradleys.

3

(who is not a bankruptcy attorney) responded the very next day, February 5, with a long letter offering to stipulate to set the judgment aside as to the one defendant Barta had mentioned in his letter as being scheduled. It is clear to the court that if Barta had spent more than 36 minutes responding to Schlom, and had included a copy of the schedules and creditor list, this entire matter would have gone away.

Incredibly, Barta waited over three months, until May 12, 2004, to respond to Schlom. When he did respond, he again failed to provide a copy of the schedules. Schlom's detailed response on May 22 asked for authority as to the effect of the discharge on a "later-created liability." At this point, being obviously out of his element despite having accepted the Bradleys' case with full knowledge of its complexity and taking a substantial fee from them,[4] Barta referred the case to David Chandler.

On July 2, 2004, Chandler wrote Schlom a demand letter citing no authority, stating that Schlom should know the judgment was a violation of the discharge injunction "following cursory review of the authorities aptly cited by Mr. Barta." Of course, Barta had not done anything aptly. It appears to the court that Chandler did not want Schlom to vacate the judgment, instead preferring to litigate in the expectation of recovering a substantial fee.

Instead of consulting competent bankruptcy counsel on his own and determining that he either had no case or the matter was not worth the risk of litigation, Schlom fell into Chandler's trap. While offering to vacate the judgment during the course of the case,[5] he left the judgment on the books and fought this adversary proceeding when he should have vacated the judgment and then looked to the court for an appropriate sanction, which would have been modest. A more substantial sanction is now required in order to discourage similar conduct in the future. While the court is usually sensitive to the plight of a non-bankruptcy attorney suddenly faced with complex bankruptcy issues, the court cannot

---

[4] And even extracting an *additional* $300 from them.

[5] The record is replete with evidence of offers by Schlom to vacate his judgment on varius modest terms. For this reason, the court is not sympathetic to the Bradleys' claims of emotional distress. While they were not compelled to accept Schlom's terms, they inflicted the stress of litigation on themselves by insisting on substantial damages. Given the large amount of the judgment against them and the colorable arguments Schlom could make, the wisdom of their choice is questionable.

4

permit such an attorney to think that he or she can avoid adverse consequences by remaining ignorant.

For the foregoing reasons, the court finds Schlom in contempt of the bankruptcy discharge injunction. As a sanction, he shall pay to the Bradleys the sum of $7,500.00.[6] It appearing that injunctive relief is no longer necessary, the Bradleys shall take nothing further on account of their complaint. The court will enter a separate judgment.

Dated: August 19, 2005

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[6] The court believes that $7,500.00 is enough to discourage future improper conduct an also believes that this sum is the most it would have cost the Bradleys if they had been represented by a single competent and reasonable bankruptcy attorney instead of the duo they chose.

5